UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**EDMUND WIATR, JR.,**

                                        **Plaintiff,**

              **-v-**                                    **5:05-CV-0765**

**DEFENSE FINANCE AND ACCOUNTING
SERVICE and ROBERTS GATES,
SECRETARY OF DEFENSE,**

                                        **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

FELT EVANS, LLP
Jay G. Williams III, Esq., of counsel
4-6 North Park Row
Clinton, New York 13323
Attorneys for Plaintiff

HON. GLENN T. SUDDABY, United States Attorney
Northern District of New York
William F. Larkin, Esq., Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendants.

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**BACKGROUND**

        Plaintiff, employed by the federal government at the Defense Finance and Accounting Service

("DFAS") in Rome, New York, brings this action under the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy

Act"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  In his

amended complaint (Dkt. No. 36), he claims defendants violated his rights under the Privacy Act when his

supervisor investigated a complaint against him.  Plaintiff also claims his supervisor lowered his annual

performance appraisal from "highly successful" to "fully successful" in retaliation for plaintiff's prior equal

employment opportunity ("EEO") activity.

Defendants move (Dkt. No. 45) for summary judgment dismissing the action.  Plaintiff cross-moves (Dkt. No. 46) for summary judgment.  A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a genuine issue of material fact requiring a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248. If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See Celotex,* 477 U.S. at 323. As set forth below, the Court denies plaintiff's motion and grants defendants' motion for summary judgment in its entirety.

### PRIVACY ACT CLAIM

The following undisputed facts are relevant to plaintiff's Privacy Act claim.  Plaintiff has been employed as an accountant in DFAS since 1992.  David Fraczek became his supervisor in September 2002. On October 9, 2003, Patricia Goodrich, an "internal customer" also employed at DFAS, gave Mr. Fraczek a memorandum stating that earlier that day she had asked plaintiff for assistance; that plaintiff had repeatedly responded, "I don't know"; that she had stated, "so you can't help me"; that he had responded in a raised voice: "I didn't say that, don't put words in my mouth, I never said that – you don't come down here and start accusing me and putting words in my mouth"; and that he had continued in the same vein in a raised voice for at least five minutes.  Ms. Goodrich wrote:

> I went back to my desk physically shaken, I have never had anyone in this office treat me in the manner he did, and not felt the abuse from anyone as I did just then from him.  Three individuals came up to me, almost immediately, to tell me I did not have to take that abuse, that I should not allow anyone to treat me that way,

2

that they had overheard him and no one should have to take what I did from him. She added that she "felt abused and degraded."

Mr. Fraczek contacted Mike Duignan, DFAS Human Resource Director, for guidance in handling the situation, and received advice a number of times from Katherine McCurdy, DFAS Management/Employee Relations specialist. As instructed, Mr. Fraczek obtained from Ms. Goodrich the names of other employees who might have witnessed the incident. He began his investigation by speaking with potential witnesses, collecting statements from them, typing up summaries of their statements, and obtaining each witness' signature on the summary of his or her statement. One witness, Mr. Deemer, requested that changes be made to his statement, and ultimately never signed it.

On October 31, 2003, after gathering information from Ms. Goodrich and witnesses, Mr. Fraczek interviewed plaintiff, asking him a series of questions as suggested by the human resources department. According to Mr. Fraczek, he did not contact plaintiff sooner because he did not know whether the complaint was valid. Mr. Fraczek did not show plaintiff Ms. Goodrich's complaint or any witness' statements. After interviewing plaintiff, Mr. Fraczek wrote a summary of his understanding of plaintiff's responses to the questions posed and sent the summary to plaintiff for signature. Initially, plaintiff refused to confirm or deny the accuracy of the summary statement of the interview, stating that he "forwarded [it] to the Union's counterparts for their review coordination and action," and requesting "copies of any and all signed statements thus to clarify any issues giving rise to this matter." Mr. Fraczek responded by e-mail stating that the investigation was not complete because he had not received plaintiff's response to the summary statement; that "until the investigation is complete, release of any statements would be premature"; that plaintiff's comments were due by November 3, 2003; and that if he did not follow the instructions, plaintiff would face disciplinary action.

Plaintiff responded by e-mail:

> I cannot confirm your summary statement as being correct or not correct, disagree
> or not disagree. You are asking me to recall something that occurred several

3

weeks and is now being resurrected for my review and accuracy and threatening disciplinary action if I do not sign something which I believe is not correct.  Until such time that I have received a copy of the employee's concerns (from my comments), then and only then, will I be able to try to recall what happened.

I am signing this statement under duress with the understanding that my supervisor is directing me to sign a statement absent my right to due process and assistance of legal counsel.

On January 29, 2004, Mr. Fraczek issued an official Letter of Reprimand against plaintiff for "rude, discourteous, and unhelpful behavior."  The letter stated: "Specifically, on Thursday, October 9, 2003, you responded to work-related questions by Ms. Patricia Goodrich, an Accounting colleague and internal customer, in a rude, discourteous and unhelpful manner."  The letter briefly summarized Ms. Goodrich's complaint and witnesses' observations.  The letter noted that plaintiff had not cooperated in verifying the accuracy of Mr. Fraczek's written summary of plaintiff's interview, and that as a result, Mr. Fraczek had closed the investigation based on the information available to him.  The letter advised plaintiff that a copy of the reprimand would remain in his file for two years and that if he believed it to be unwarranted, he could file a grievance in accordance with the agreement between the employer and the union.

In the first cause of action in the amended complaint (Dkt. No. 35), plaintiff contends that "[p]ursuant to § 552a of the Privacy Act, Defendant was required to first collect information from the subject of the investigation before interviewing other employees" and that "[t]here is no valid reason as to why the Defendant's employee conducted an investigation without speaking first to Plaintiff."  Plaintiff alleges the investigation did not provide him "adequate opportunity to be heard to submit evidence by reason of the actions of the Defendant."  As a result, he claims, DFAS issued the January 29, 2003 letter of reprimand which adversely affected him in the terms and conditions of his employment and caused him monetary and emotional damages.

 Section 552a(e)(2) of the Privacy Act requires each agency that maintains a system of records about individuals to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits,

and privileges under Federal programs[.]"  "[T]he specific nature of each case shapes the practical considerations at stake that determine whether an agency has fulfilled its obligation" under this section. *Cardamone v. Cohen*, 241 F.3d 520, 528 (6th Cir. 2001).[1]  Accordingly, this Court reviews the record to ascertain whether, viewing the evidence in the light most favorable to plaintiff, a rational jury could find that DFAS violated plaintiff's rights by failing to "collect information to the greatest extent practicable directly from [plaintiff.]"

Plaintiff does not dispute that, before imposing discipline, Mr. Fraczek interviewed him and gave him an opportunity to respond to Mr. Fraczek's written statement summarizing that interview.  Plaintiff argues, however, that Mr. Fraczek should have interviewed him <u>first</u>, before interviewing Ms. Goodrich and other witnesses.  Plaintiff acknowledges that section 552a(e)(2) does not prescribe a particular interview sequence[2]; plaintiff contends, however, that courts interpret this section as requiring an agency to collect information first from the subject of the investigation before seeking it from other sources, citing *Waters v. Thornburgh*, 888 F.2d 870 (D.C.Cir. 1989) (holding that the Justice Department violated section 552a(e)(2) by failing to ask the subject to produce his bar examination attendance ticket before contacting state bar authorities about his attendance).  *Waters*, however, involved an investigation seeking "objective, unalterable information," 888 F.2d at 873, that could resolve the matter.  In such a case, where the subject could likely provide conclusive information that would resolve the matter entirely, it is reasonable to apply section 552a(e)(2) to require the agency to approach the subject first.

The case at bar, however, is not such a case.  Due to the subjective nature of the charge, there was

---

[1]

The Second Circuit has questioned whether section 552a(e)(2) applies to a federal agency's relationship with its employees.  *See Carton v. Reno*, 310 F.3d 108, 111-12 (2d Cir. 2002).  This Court need not address that issue because, even assuming section 552a(e)(2) does apply here, there is no violation.

[2]

Nor is such a sequence required by the Guidelines promulgated with the Privacy Act by the Office of Management and Budget.  *See* 40 Fed. Reg. 28949, 28961 ("Practical considerations ... may dictate that a third-party source ... be used as a source of information in some cases .... [I]t may well be that the kind of information needed can only be obtained from a third party[.]").

no reasonable possibility that plaintiff could have provided objective, unalterable information that would have ended the investigation.  Simply interviewing plaintiff regarding Ms. Goodrich's complaint could not have resolved the matter.  Even a categorical denial by plaintiff would not have obviated the need for further investigation; interviews with the complainant and other witnesses were essential.  *See, e.g., Carton v. Reno*, 310 F.3d 108, 112 (2d Cir. 2002) (holding that practical considerations – including the fact that the allegations against plaintiff "could not be dispelled categorically by anything [he] could say or adduce" – justified interviewing third-party sources); *Cardamone,* 241 F.3d at 528 ("[I]t is ... impracticable to think that charges of employee mistreatment and harassment could be resolved by interviewing [plaintiff] before others.").

Further, it was "practicable" for Mr. Fraczek to interview Ms. Goodrich and others before interviewing plaintiff.  Mr. Fraczek said he did so to ascertain whether the complaint was "valid."  *See Brune v. Internal Revenue Serv.*, 861 F.2d 1284, 1287 (D.C.Cir. 1988) (noting the benefit of ascertaining initially from third parties whether there is any substance to the allegations against the subject).  Also, he used the information gathered in those interviews to assist him when he questioned plaintiff.  *See Carton*, 310 F.3d at 112 (stating it was reasonable to expect that interviews with the complainant and others "would sharpen the issues and focus the charges in a way that would allow [plaintiff] to respond more particularly, and that this sequence would serve his interests as well as the interests of a fair investigation.").  There is no reason to think that interviewing plaintiff first would have enhanced the investigation; indeed, when asked to respond to Mr. Fraczek's summary statement, plaintiff insisted that "[u]ntil such time that I have received a copy of the employee's concerns..., then and only then, will I be able to try to recall what happened."

Finally, Mr. Fraczek made every reasonable effort to obtain plaintiff's version of events and to verify the accuracy of the third-party information he had gathered.  *See* Office of Management and Budget Privacy Act Guidelines, 40 Fed. Reg. 28949, 28961 (stating that an agency collecting third-party information should consider "[p]rovisions for verifying, whenever possible, any such third-party

information with the individual before making a determination based on that information."). It is undisputed that, after interviewing Ms. Goodrich and other witnesses, Mr. Fraczek interviewed plaintiff, wrote a summary of the interview, provided the summary to plaintiff, and twice sought plaintiff's response. In the particular circumstances of this case, DFAS collected information directly from plaintiff to the greatest extent practicable.

Accordingly, on the undisputed record evidence, no reasonable factfinder could find that defendants failed to comply with section 552a(e)(2) of the Privacy Act. Defendants are entitled to summary judgment dismissing this claim.

### RETALIATION CLAIM

Regarding the second cause of action, plaintiff's amended complaint alleges as follows:

On October 8, 2003, David Fraczek was directed to give testimony in an EEO matter wherein Plaintiff represented a bargaining unit member.

On or about April 1, 2004, Defendant, through its employee, David Fraczek, lowered Plaintiff's annual performance appraisal from highly successful to fully successful.

The lowered appraisal was ostensibly because of Plaintiffs Letter of Reprimand.

The lowered appraisal has been detrimental to the Plaintiffs career.

The lowered appraisal was in retaliation for the Plaintiffs prior EEOC [Equal Employment Opportunity Commission] activity.

(Paragraph numbering omitted.)

There is evidence that on October 8, 2003, Mr. Fraczek, plaintiff's supervisor since September 2002, was required to give sworn testimony before an investigator in the Department of Defense Office of Complaints Investigation ("OCI") regarding an EEO complaint plaintiff had filed previously.[3] The file contains a memorandum dated September 22, 2003 from OCI investigator Anne Mitchell to DFAS,

---

[3]

This differs from the amended complaint, which alleges that the testimony required of Mr. Fraczek on October 8, 2003 concerned an EEO matter "wherein Plaintiff represented a bargaining unit member."

scheduling the October 8, 2003 investigation.  According to the OCI memorandum, the claims under

investigation were as follows:

> (a) Whether the complainant was discriminated against based on reprisal when he
> was subjected to ongoing retaliation and different treatment by:
> • Being charged with eight hours Absence Without Leave on December 9,
>   2002.
> • Being denied use of official time and forced to use annual leave to
>   represent bargaining unit employees before EEOC proceedings on or
>   about December 2002.
> • Having his request for official administrative time to prepare for a pre-
>   scheduling EEOC conference call ignored and not responded to by Dave
>   Fraczek and John Kay on or about December 11, 2002.
> • Being directed by Dave Fraczek on March 18, 2003, to accurately and
>   timely submit his travel vouchers, e-biz timesheets, leave requests, and
>   other similar types of documents.
> (b) Whether the complainant was discriminated against based on reprisal (prior
> EEO protected activity) when he was denied a requested reasonable
> accommodation to work at home during his father's illness.

Plaintiff's affidavit states that annual performance reviews are given covering the period of May 1

of one year through April 30 of the following year; that because Mr. Fraczek was moving away, he gave

plaintiff his 2003-2004 appraisal early, on April 1, 2004, covering the period of May 1, 2003 through April

3, 2004; that in that performance review Mr. Fraczek appraised plaintiff as "fully successful"; that this was

lower than plaintiff's "highly successful" appraisal for the period of May 1, 2002 through April 30, 2003;

and that Mr. Fraczek told plaintiff he gave him a lower appraisal "because of the Trish Goodrich situation."

Plaintiff avers that due to this lower appraisal he was passed over for promotions.

The EEO Complaint Intake Form (or "pre-complaint"), filled out by an EEO counselor on April 15,

2004 regarding plaintiff's claim, states that Mr. Fraczek discriminated against plaintiff on the basis of age,

gender, and in retaliation for prior EEO activity as follows: "On 4/2/2004 I received my annual appraisal

that was lowered from highly to fully [successful] from my supervisor David Fraczek."  The formal

discrimination complaint dated May 24, 2004 states a similar claim.  On June 3, 2003, the DFAS EEO

Office dismissed the complaint on the ground it was premature.[4]  On plaintiff's administrative appeal, the EEOC affirmed the dismissal on January 5, 2005, and denied reconsideration on March 23, 2005.  Plaintiff timely filed this action.

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show the following: he was engaged in protected activity known to the employer; he suffered an adverse employment action; and there was a causal connection between the protected activity and the adverse employment action.  *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998).  To satisfy the "protected activity" element, the plaintiff must have had a good faith, reasonable belief that he was opposing a prohibited employment practice.  *See Kessler v. Westchester Co. Dept. of Social Servs.*, 461 F.3d 199, 210 (2d Cir. 2006).  A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action can establish the required causal link for a *prima facie* case.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See id.* at 721.  If the defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.  *See id*.

In the case at bar, it is questionable whether plaintiff has established the elements of a *prima facie* case of retaliation.  There is no evidence regarding the alleged protected activity – the prior EEO complaint – except the September 22, 2003 notice of the October 8, 2003 OCI investigation.  The notice contains little information regarding the underlying incidents; for example, it does not appear how many of the underlying

---

[4] The DFAS EEO Office decision stated: "In your complaint you allege discrimination ... when you were told by David Fraczek on April 2, 2004 that you were going to get a Fully Successful rating on your Annual Performance Appraisal for rating period ending April 30, 2004. ... [The applicable regulation] requires the dismissal of complaints that allege discrimination "in any preliminary steps that do not, without further action, affect the person."  In fact, however, it is undisputed that Mr. Fraczek gave plaintiff the performance appraisal on April 1, 2004.

incidents involved Mr. Fraczek or when Mr. Fraczek learned of the complaint, nor is there evidence regarding whether in filing that complaint plaintiff had a reasonable, good-faith belief that he was opposing a prohibited employment practice.  Defendants also submit evidence that the "fully successful" performance appraisal does not constitute an adverse employment action.  As for a causal connection between the protected activity and the adverse employment action, plaintiff claims that, in retaliation for being required to testify in the OCI investigation on October 8, 2003, Mr. Fraczek conducted a biased investigation of Ms. Goodrich's October 9, 2003 complaint, resulting in the lower performance appraisal.  The Court accepts for purposes of this decision that the proximity in time of the two events is a sufficient preliminary showing of causation and that plaintiff has otherwise shown a *prima facie* case of retaliation.

Assuming that plaintiff has made out a *prima facie* case, the burden shifts to defendants to articulate a legitimate, non-retaliatory reason for the lower performance appraisal.  The record shows that Mr. Fraczek received a detailed memorandum from Ms. Goodrich summarizing the exchange between her and plaintiff.  The contents of the memorandum were a legitimate ground for Mr. Fraczek, as plaintiff's supervisor, to investigate the matter.  In conducting the investigation, Mr. Fraczek followed the procedure recommended by the human resources department, first interviewing and obtaining written statements from witnesses, and then interviewing plaintiff.  There is no suggestion that the human resources personnel did not have legitimate reasons for recommending this procedure.  Mr. Fraczek gave plaintiff an opportunity to respond to his summary of plaintiff's interview, but plaintiff refused to respond in a meaningful manner, thus effectively declining to contribute to the investigation.  The Court has already rejected plaintiff's Privacy Act claim, and there is no other ground to find that the investigation was not conducted properly and fairly. Based on the information gathered in the investigation, Mr. Fraczek reasonably concluded that the incident occurred as Ms. Goodrich and the other witnesses described it, and that as a result plaintiff should be reprimanded for "rude, discourteous, and unhelpful behavior."  The conclusion that plaintiff had treated Ms. Goodrich in a rude, discourteous, and unhelpful manner provided a legitimate, non-retaliatory basis for

giving plaintiff a lower performance appraisal than he had received the previous year. Based on the record evidence, defendants have proven a legitimate, non-retaliatory ground for their conduct.

Finally, the Court considers whether plaintiff has adduced evidence that would permit a rational factfinder to conclude that defendants' explanation for the lower performance appraisal is a pretext and that the real reason was retaliation for plaintiff's prior complaint. Plaintiff offers no direct evidence of pretext or retaliatory motive, and no evidence that the performance appraisal was based on anything other than Mr. Fraczek's evaluation of plaintiff's performance.

Plaintiff argues that he has shown pretext and retaliatory motive by showing temporal proximity between a protected activity and an adverse employment action. Specifically, he contends that the October 8, 2003 OCI investigation is a protected activity, and that Ms. Goodrich's October 9, 2003 complaint and Mr. Fraczek's ensuing investigation are adverse employment actions. On the facts of this case, the temporal proximity between these events fails to satisfy plaintiff's burden to show pretext and retaliatory motive. First, plaintiff has not shown that October 8, 2003 is a reasonable "starting date" for measuring temporal proximity. October 8, 2003 is merely the date set in the September 22, 2003 notice for the OCI investigator to question Mr. Fraczek and others about plaintiff's earlier retaliation complaint. Plaintiff does not show when that earlier retaliation complaint was made, or when Mr. Fraczek first learned of it. In the unlikely event that he had not previously been aware of the earlier complaint, Mr. Fraczek would have learned of it when he received the September 22, 2003 notice that he would have to testify, not on the date of the October 8, 2003 OCI investigation. Plaintiff's statement that on October 8, 2003, Mr. Fraczek seemed annoyed at having to testify is insufficient, on this record, to support a finding that the October 8, 2003 OCI investigation in itself would have motivated Mr. Fraczek to retaliate against plaintiff.

In any event, even accepting the October 8, 2003 OCI investigation as a protected activity, plaintiff has failed to show a temporally proximate adverse employment action. The only adverse employment action cited by plaintiff in his amended complaint and EEO complaint is the lower performance appraisal

Mr. Fraczek gave him on April 1, 2004.  Ms. Goodrich's complaint is not an employment action, nor is Mr. Fraczek's investigation; in any event, plaintiff cannot rely on any adverse employment action other than the April 1, 2004 performance appraisal, because he did not exhaust his administrative remedies with respect to any other action.  On this record, the six-month period between the October 8, 2003 OCI questioning and the April 1, 2004 appraisal is far too long to support a finding of retaliatory motive based on temporal proximity.

There is no other evidence of pretext or retaliatory motive.  There is no evidence that Mr. Fraczek somehow instigated Ms. Goodrich's October 9, 2003 complaint, and the fact that she made the complaint provides no support for a finding that defendants had a retaliatory motive.  Nor is there any showing that the investigatory process itself was retaliatory.  Mr. Fraczek followed the procedure recommended by the human resources department, and there is no evidence that the human resources personnel, in recommending the procedure, had any retaliatory motive.[5]  It is true that the only evidence before Mr. Fraczek was that of Ms. Goodrich and the witnesses she named; this circumstance, however, resulted from plaintiff's conduct.  As noted above, in view of the outcome of the investigation, Mr. Fraczek was justified in issuing the January 29, 2004 reprimand and in giving the lower performance appraisal.  Plaintiff has not adduced proof that would permit a jury to find an impermissible retaliatory motive for the April 1, 2004 performance appraisal.

In sum, defendants have adduced competent evidence showing a legitimate non-retaliatory reason for the conduct of which plaintiff complains.  Plaintiff has presented no competent evidence upon which a reasonable finder of fact could find that he was the victim of retaliation.  Defendants have established their entitlement to summary judgment dismissing plaintiff's retaliation claim.

---

[5] The Court is aware of plaintiff's opinion that the investigation should have been conducted differently.  In this respect, plaintiff relies on the affidavit of a coworker, Pamela J. Johnson, who says she was a "party" to the incident and finds it "suspicious" that Mr. Fraczek did not interview her.  However, there is no evidence that Mr. Fraczek had any reason to think Ms. Johnson could offer pertinent information.  Indeed, it appears from her affidavit that, although she visually observed the exchange between plaintiff and Ms. Goodrich, Ms. Johnson did not hear what they said.

**CONCLUSION**

It is therefore

ORDERED that defendants' motion (Dkt. No. 45) for summary judgment is granted; and it is further

ORDERED that plaintiff's cross motion (Dkt. No. 46) for summary judgment is denied; and it is further

ORDERED that the complaint is dismissed with prejudice.

IT IS SO ORDERED.

July 7, 2008
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

13